next here argument in the matter of Romansky versus Superintendent of Greene SCI and the Attorney General. Miss Fisher. Good morning. May it please the court. Ronnie Fisher for the appellant Stephen Romansky. Now, Fisher, could I start with just a little bit of housekeeping? I'll call it a rebuttal. However, I was just going to say I'd like to ask for a few minutes. We have two issues on which the COA is granted. There's a request for expansion to a third issue. Can you agree that there's nothing to issue? What would be issue number three? That is, do you disagree with the assertion that a presentment is nothing more than a recommendation to either the AG or the district attorney as the case may be? Well, let me and as a caveat, let me just say the question is being directed to you by someone who ran one of the first countywide investigative grand juries in Pennsylvania under the statute and then served as a county district attorney. Maybe I'll put it this way. I did not plan on arguing that issue. Good response. That's really what I wanted to establish. We'll move on to the other two issues. The issues that the court certified on appeal deal with Romansky's conspiracy sentence of two to four years. The first threshold issue with respect to this claim is whether the claim is timely. Romansky was convicted of this claim back in 1987, but then he didn't file his habeas petition until 2009 while his PCAR proceedings were going on in state court. You rely on Magwood to suggest that it is timely. Is that correct? That's correct. Magwood has a hole in it, doesn't it, in terms of this issue? Yes, exactly, Your Honor. They expressly did not decide this issue of whether a petitioner who gets resentenced and then he would be allowed to challenge the underlying undisturbed conviction as opposed to something in the resent. So what do we make of the superior court's opinion at the very end where it says, hence, we vacate appellant's convictions for charges stemming from the 79 Bronco and remand for a new trial as to those charges, period. Appellant's convictions for charges stemming from the 77 Trans Am shall stand. How do you reconcile that with Magwood? And what would the common pleas court judge have done otherwise given that directive by the superior court? Well, with respect to the first issue, what I make of that, I submit that the superior court can't habeas proof its ruling by saying you cannot ever challenge it. I submit that that is in the context of that appeal. And that appeal was... You're not suggesting that that's what the superior court was doing here, are you? Yeah. It wasn't trying to habeas proof something. It was directing the common pleas judge, here's what you have to retry. Here's what you don't have to retry. Exactly. That's correct. And I'll also point out that that decision was back in October of 1997, which predates Magwood, the superior court's decision. Magwood was different in that it completely... It was reviewing a second conviction, right? So the first capital conviction was vacated in full, and then the individual was convicted and resentenced to death, right? They're two separate convictions. Your Honor, I believe in Magwood, it was a resentencing that the defendant underwent. But after a second trial, after the first was vacated in full, right? Your Honor, I understood that... I could be wrong on this, but my understanding of Magwood was that it was just a resentencing. And it was a full resentencing that was held, because what Magwood challenged was that the court did not consider mitigating circumstances relating to his mental state in fashioning his sentence. But the sentence that was imposed by Judge Thompson on March 2nd, 2000, was not a full resentencing, was it? It was just a sentencing of what had been retried. Yes, that's correct. So it's not the Magwood situation, is it? No, it's not the Magwood situation, Your Honor. So, I don't see what we can look to here to suggest that somehow what we have is a situation that would give rise to habeas. What do you make of this March 2 order? That's what we're left with, isn't it? Isn't that really the last round in the prosecution of these cases? Yes, Your Honor, it is the last round in the prosecution of these cases. And so we submit that that is the time period from which, when his judgment becomes final, should be calculated by. In other words, it's all about what constitutes the judgment. And so what we're saying is that the judgment... Which judgment? Romanski's judgment. That resulted from the March 2, 2000 sentencing? That his judgment is... It must be looked at as a whole. In other words, his judgment is his 1987 convictions and sentence, plus the 2003 convictions, if you will, and sentence. From what do you draw that combination of those two judgments? There is no incorporation in the March 2, 2000 order of the earlier judgment, right? That's correct. It essentially just said that he was being sentenced consecutive to those other sentences that he had gotten back. But, yeah, you're right. Just that. And you understand that under Pennsylvania law, which was not in effect when I was a Pennsylvania common pleas court judge, but in the mid-90s, Pennsylvania law was changed to require a sentencing judge to set out that the sentence is to be consecutive, if that is the intention of the sentencing judge. So this is actually language in the order that the law required the judge to include in the order because he intended a consecutive sentence. There's nothing about the reference to the earlier charge that would suggest it becomes a part of this judgment. Only that this judgment and the sentence imposed therein be consecutive to the sentence imposed in the earlier judgment. That's correct. There's nothing in the sentencing order of March 2, 2000 that suggests that. Well, it goes further than that, doesn't it? Because it explicitly says it's only the Bronco. Yes, that's correct. It's only the Bronco. And so what I'm drawing on then are the line of cases that talk about what constitutes a judgment in the context of habeas petitions. And so there's a majority interpretation that says that a petitioner's convictions and his sentences, in a particular case, are all components of a single judgment. So as a result, any change to any of the components creates a new judgment with respect to all aspects of the case. Even if the judgment is limited explicitly to the Bronco? In this case. And to be honest, I don't think any of those other decisions had one that said it's limited expressly to this case. Although in those other cases, and it's unfortunate when you look at those other cases that it doesn't specifically say what was said, they frequently were given either a re-sentence or a new trial on specific charges. So the effect is essentially the same. So just trying to figure out, we're here today. I take it he's out of prison by now? No, your honor, he's not. Not until 2020, right? That's right. February 15th of 2020. Okay. I'm going back to you. Okay. That answers it. Yes. And. And that's as a consequence of the consecutive nature of sentences, which included several arson prosecutions, right? In another county, that's correct, your honor. Yeah, this was in Pike County. Yes, that's correct, your honor. Yes. And so what we submit is that his re-sentencing in 2000 created a new intervening judgment that was comprised of his 1987 convictions and sentence and his 2000 convictions and his re-sentence. And based on that, his habeas would be timely as his judgment would have then become final in July of 2001, which would have given him until July of 2002 to file. And what he did instead was he filed a timely PCRA petition in April of 2002, which told the statute of limitations. The second part of this issue is whether his conspiracy sentence is illegal, because he was convicted of and sentenced on the original conspiracy charge after it had been changed to a different. We obviously only get there if we find it was timely, correct? That's correct, your honor. Yes. And with respect to that issue, the conspiracy charge started out as one that conspiracy to deal in vehicles with removed or falsified identification numbers. Then at Romanski's preliminary hearing, in response to some questions by Romanski's attorney, the trooper, when he was asked on cross-examination what is the object of the conspiracy charge, he responded that it was probably receiving stolen property and a few of the other charges that Romanski was charged with, which would be charges relating to changing vehicle identification numbers. So as a result, at the conclusion of that preliminary hearing, his conspiracy charge was changed to conspiracy receiving stolen property, as was reflected in the magistrate's transcript and the common pleas docket. When it was time to instruct the jury, however, the trial court did not instruct the jury on conspiracy receiving stolen property, but rather on conspiracy to deal in vehicles with removed or falsified identification numbers. Now, I wrote in my brief that the Commonwealth cannot and does not dispute that Romanski was convicted of and sentenced on the wrong conspiracy charge because they had previously conceded this. But the Court of Common Pleas and the PCRA didn't buy that, right? That's correct, Your Honor. They did not. And what was the reasoning for that? Oh, I'm sorry. Why was the court not buying it? The court was not buying it because... He didn't think the record was very clear, did he? I mean, this is characteristic of old state habeas actions, especially in smaller counties where sometimes things aren't transcribed and the records are either unavailable or hard to come by. Yes, that's correct, Your Honor. Plus you had a prosecutor agreeing to this who was not the prosecutor, who had earlier been on the case, right? That's correct, Your Honor. Yes. And so now we have a new Deputy Attorney General on the case, and the Commonwealth argues that Romanski wasn't really convicted of the wrong charge because while the charge was changed at the hearing, preliminary hearing, to conspiracy, receiving stolen property, the information identifies it as conspiracy to deal in vehicles with falsified identification numbers slash theft and receiving stolen property is the same as theft. While it's true that the information does define or does identify the charge in this way, the Commonwealth admits that the charges in the information must be limited to those that are held over as a result of the preliminary hearing. And at the preliminary hearing, the theft portion of that conspiracy charge was never brought up. So there's nothing in the preliminary hearing transcript, and again going back to that they didn't transcribe everything. Not only that, most of the time, at least back in those days, there wasn't even a court reporter or a transcript prepared of a preliminary hearing. It was the unusual case where there would be. This might be the unusual case because it came out of an investigating grand jury. Yes, and this was such an unusual case where we do have the transcript of the preliminary hearing. However, they didn't transcribe the whole preliminary hearing. But what we do have that talks about the conspiracy charge makes no mention of theft with relation to that charge. And further, while the trial court gave no jury instructions with respect to either or instructed only as to dealing in vehicles with falsified identification numbers. It's interesting. This is an issue he purportedly discovered on his own at a hearing, correct? Well, actually, I suppose I could say ironically the Commonwealth really discovered this issue. That's when he first knew about it, right? Yes, that's right. You've got a meritorious claim here, but let's go back to the timing again. If he had filed a federal habeas petition in 1999 challenging the conspiracy sentence, that would have been untimely, would it not?  So you're saying because he missed that opportunity, but he gets another opportunity because he's convicted again on the retrial on the Bronco, taking the stolen property there. It just doesn't feel right. Yes, and I understand, Your Honor, but what I'm saying is that's what the cases that have, and again, I'm going by the majority interpretation, but I would point out that this circuit has gone along with that majority interpretation in non-presidential decisions. The main one is in Wade Brown. One more question before we hear from your adversary. I am unable to find in the record or in anything I have looked at that substantiates the suggestion that there's some kind of variance between the actual charge of conviction and what was charged. Where is that? With respect to the conspiracy? It doesn't matter what happened at the preliminary hearing because that is a completely different purpose. Once the district attorney signs and files the information, that's what governs the prosecution going forward. Similarly, though certainly differently constitutionally from an indictment. So where is there a variance between what is set forth in the information and what Mr. Romanski was ultimately convicted of? There is nothing after that point, after the information was filed, Your Honor. What's in the record is prior to the information being filed, and that would be again as reflected in the docket from the preliminary hearing as well as in the common pleas docket itself for the case. Thank you very much. We'll have you back on rebuttal. Mr. Barker? Good morning. May it please the Court. James Barker from the Attorney General's Office on behalf of the Commonwealth. First, to clarify one point, in Magwood v. Patterson, what was at issue was a second sentence. Correct. It was the first sentence that was set aside. There was no full, complete trial the second time around. But the entirety of the sentence was set aside. Correct. And my whole point about Magwood would be that it really is just a particular application of an old principle of law. The Supreme Court first set it back in 1937 in Berman v. United States, which is the sentence is the judgment. And that continues to be the law as recently as 2007. Berman was quoted in Burton v. Patterson. What we would suggest is in this instance you have two sentences, therefore you have two judgments. And it's really rather a simple application of simple law. If the Court had sent the case back for a new trial as well as a resentencing on all counts, then we would be here in a completely different procedural posture. But as it is, the 1987 conviction and sentence stands as the judgment at issue for purposes of count five of the criminal information. And so I really don't have much to add as far as it goes on that jurisdictional issue. It is pretty straightforward. And I would hope that what I said in my brief about grand jury law was correct, Your Honor, since you seem to know it better than I do. I just told her that's all. And as far as the merits go, under Pennsylvania law and a very clear statute, theft is anything under Chapter 39 of our Crimes Code. And in this instance. That's so broad, it's ridiculous. I mean, what could be covered under that? Right. The count one of this criminal information was receiving stolen property. What we call theft by receiving stolen property. And I've always called it theft. And it, in fact, appears in the same chapter of the Crimes Code. As every other type of theft, theft of services. Correct. And the statute itself begins with a person is guilty of theft. The problem I'm having is you've got a criminal information. It's changed. And yet the judge in doing the jury instruction I think only mentions and or theft once. Where later on when it could have mentioned it, didn't do so. So you really. I mean, to me, this Commonwealth's already conceded that the jury was incorrectly instructed. I don't know that I conceded that, Your Honor. I'm not sure. And the way back in 2000, wasn't it? I think that's correct, but I'm not sure that the Deputy Attorney General handling the case back then fully understood. That portion of the jury instruction says that you can be guilty of this number violation, vehicle number violation, and or theft. The judge had already instructed the jury on receiving stolen property. So he didn't repeat that instruction. Well, I've got the instruction. Do you have the instruction here? I do not have it with me, Your Honor, but I understand what you're saying. What he did not do that he should have done was say, by the way, I've already instructed you on the elements of receiving stolen property. But he instructed them on that as far as count one went, because that's what the charge was. Yeah, he talks only about conspiracy to deal in vehicles with removed or falsified numbers. At one point, he says and or theft. But then he goes down and he says, here's what you need to have. And he never talks about theft again. And I agree. He should have said, by the way, the theft that we're talking about was what we said in count one. Yeah, I mean, it was. So it it looks like. And to be honest with you, I don't have in front of me the closing arguments as well, which could have placed that into context. Thank you very much. Parker and we'll have Miss Fisher back. I'm looking to add another dumb question. What would have happened if the 2000 trial with respect to the Bronco resulted in an acquittal? What would have happened if the trial had resulted in an acquittal? We wouldn't be here, would we? I don't think we would be. But he would still be in the same sentence. He has. Right. Yes, that's correct. I have nothing further to add. All right. Thank you. Thank you very much. Miss Fisher, Mr. Parker. We'll take the case under advisement.